Good morning, I'd like to reserve five minutes of the argument. Yes, Doug Phelps here, I represent Mr. Lobdell, the Lobdells in this particular case. And this is a DeNova review, and under Holloway v. Horn, the court must accept all factual allegations as true. In this case, we brought a Fourth Amendment search issue, a Fourteenth Amendment due process claim, and a 1983 claim regarding municipal supervision, state law claims, and common law negligence claims. The facts are particularly important in this case in that the police arrived after a call from Mr. Lobdell, and the police upon arrival had Mr. Lobdell exit the home. He did exit the home voluntarily, was handcuffed, placed in the back of a squad car under arrest, and given Miranda warnings and questioned, and he denied having any firearm, and told law enforcement that he was not consenting to any search of the home. Ms. Lobdell was outside the home, the police came into the home, were in the home for 19 minutes, and then determined that they needed to find some sort of a reason to continue to search the home after Mr. Lobdell had told them they couldn't search the home. And they came up with an argument that there was exigent circumstances that would justify their search, and they continued the search without any agreement by either party. Well, didn't they also, excuse me, didn't they also assert that Ms. Lobdell had consented? They did, but the court made, in the decision of the court, the court said that Ms. Lobdell had not agreed to or consented to the search of the home. That was part of what the court found in the court's decision, that she had not consented to the search. And we cited to that in our brief. The lower court mentioned that Ms. Lobdell never gave explicit consent to search the home, and we cite ER 4-7-8 on that. So, the court actually found that she never gave explicit consent to search the home. Well, did she give, excuse me, I'm sorry, forgive me, did she give implicit consent by leading them to the place where she believed the gun had come from? Well, at that point, law enforcement had already entered the home, having been advised by Mr. Lobdell that he did not consent to the search. So, at that point, they're in the home without a search warrant. She doesn't say, get out of here. She says, come with me and I'll show you where I think the gun was, in effect. Well, effectively, they asked where she believed the gun was, and I guess once they're in the home, then she does take them into a bedroom where she says she initially, and I don't think she ever said she saw the gun. She came into the room, saw a gun case there, and Mr. Lobdell had his hands behind his back. I think it was her, I guess, opinion that he may have had a gun behind his back at that particular point. Well, when she makes her call, her phone call, she says her husband is intoxicating and carrying a firearm. That's what the 9-1-1 alleged that she had said, but when the police arrived, they removed both Mr. Lobdell and Mrs. Lobdell, and then they re-enter the home after he's handcuffed and in the back of the squad car and has told them that he's not agreeing to a search of the home. Would she, assume for a moment, what's not here in the record, but assume for a moment she gave explicit permission to come into the house and search for the firearm. Did she have authority to give that permission? No. Why not? Because the husband had already told law enforcement they could not search the home. Well, but she's also, I assume, a resident of the home? Yes. So she can't override the husband and give permission? I don't believe so. Why not? Well, case law, uh, when a person is physically present and that inhabitant refuses consent to the police to search, any other consent is irrelevant. Counsel, can you point me to the record where it shows that Mr. Lobdell expressly refused consent? I have your briefing. My understanding of the record is that he didn't, he was just silent. The officers didn't ask him for his consent. He didn't actively, affirmatively say, I don't consent. He was just silent. So if I'm wrong, can you please point me to the record that shows he... I think unless he gives them consent, uh, the, uh, there is no consent. Uh, if he does not give them consent, then there is no consent and they can't, uh, they can't, uh, take it that merely his silence is some sort of an agreement to search. But my understanding of the record is that... But you're not, you're, you're clarifying that he just didn't expressly give consent, right? He didn't affirmatively say, I object. Is that correct? Or you do not have my consent. That was never a discussion between Mr. Lobdell and the police. Is that correct? My understanding was the police asked him and he told them no. Okay. Can you point me to the record that shows that? Uh, we cited to that in our briefing and it was an ER four through seven, eight. Sorry, can you repeat that? The lower courts, the lower court made the conclusion that Ms. Lobdell, uh, consent negated Mr. Lobdell's refusal, uh, in the, in her decision of the lower court, which, uh, would appear to me to be an acknowledgement that Mr. Lobdell's refusal to give consent to Mr. Lobdell refused to allow entry into the home. Well, going back to Ms. Lobdell, the record says that after she explained to the officers how she had been mistreated by Mr. Lobdell, uh, she was asked if she knew where the firearm was, because she explained to the officers already about, uh, the firearm and then quote, Ms. Lobdell escorted the police officer to their bedroom and said that the last place that she saw the gun case was on top of a storage tote near the bed. Why isn't that consent? She's leading the police officer into her home and pointing them to the right place. Well, uh, I, I think that was in response to, uh, the police who were already in the home at that point, uh, asking her to point out, uh, what she believed occurred. And it was not, uh, any in response to any, uh, requests for a search. Uh, and that question, uh, was not put to Ms. Lobdell. But even if it had been, the case law indicates that once Mr. Lobdell says no, then what they should have gone and done is gotten a warrant. And, uh, and I, and we would point out that, uh, a warrantless search is presumptively, uh, a violation of the fourth amendment. Well, so they first enter to do a protective sweep. That's not where they, uh, uh, search for the gun in, in the sense we're now talking about. It's not where they obtained the gun. They do a protective sweep. Then they talk to her. They asked to speak to her. They talked to her at length. She explains all about the firearm. And then they say, where was the firearm? And she doesn't just verbally respond. She says, come with me in effect and take some to the place where they are able to recover the firearm. Why isn't that total consent? Well, it wasn't a protective sweep because the police surrounded the home upon arrival and they demanded that Mr. Lobdell come out. He came out, surrendered. They handcuffed him and placed him in the back of the squad car. And after they handcuffed him and placed him in the back of the squad car, they read him Miranda warnings. And then they questioned him about searching the house. He told them no. Mr. Lobdell was outside of the home before the police ever entered it. The perpetrator or the alleged perpetrator at that point was in custody and there was nothing to enter the home for in terms of a protective sweep. Perpetrator was already in custody. So there was no basis for a protective sweep at that point. Counsel, do you want to reserve the rest of your time? Yes, that's fine. Thank you. Morning, Your Honors. Okay, good morning. May it please the court. My name is Rekia Adams on behalf of the City of Airway Heights and the Airway Heights individuals. I'm splitting my time today with the County of Spokane. So after 10 minutes, I'll be stepping aside to give Miss Yakeley the remainder of my time. Thank you. Your Honors, in order for the appellants to get the relief they seek, this court would have to reverse the lower court and agree with the appellants that Danielle Lobdell's consent to search for a loaded gun was invalid. And two, a loaded weapon missing in a home with two young children is not dangerous. The record shows the opposite of these contentions and the law upholds the warrantless search that took place here. This court should affirm the lower court's ruling. You're saying the protective sweep was justified because of the presence of the children and they didn't yet have the actual loaded gun. And so there was an implicit danger right then, right there. For the protective sweep for the police to secure the premises directly after a domestic violence call, yes. And then there's the separate search that happened after the sweep. And that search is also justified even without the warrant, given that Mrs. Lobdell consented to the search, impliedly, and that exigent circumstances or the emergency exception would allow for the police officers to secure a loaded gun in a home with two young children. So the protective sweep is justified even though everyone is outside the home. Yes, Your Honor. And it's justified because the police think, well, after we leave he's going to go back in, have access to the gun, and the danger will then be clear and present. Is that the argument? That's part of the argument that Mr. Lobdell could bail out, come home, find the weapon that he had hidden and presumably use it. Also that two young children, I believe they were five and seven years old, could come across the loaded weapon in the time that the police arrived to detain Mr. Lobdell. So that protective sweep was for the protection of the officers at the time. Focusing on the protective sweep for the moment, the focus there is on the possibility that the young children, even after Mr. Lobdell was secured, the possibility that young children would find the gun that had not yet been found. Is that correct? Yes, Your Honor. And why is that protection of the police? It's protection of the children. And it's also for the protection of the police if the children got a hold of the weapon and accidentally aimed it at the police, Your Honor. This is a dangerous weapon. It's loaded. And that seems pretty far-fetched. Everybody's outside. The children are outside. For your hypothetical to have any real bite, you have to have the children back in the house. You have to have the police in the house. And you have to have these little children finding a gun and shooting the police in the house. That's pretty, that's a stretch. I understand your concern, Your Honor. But the children were alone in the home at the time, Mrs. Lobdell. But at the time they go in, the children are not in the house. At the time that the police enter to do the protective sweep, the children are alone in the home. It's Mrs. Lobdell that is outside waiting for the police. And it's Mr. Lobdell that's then being detained and then placed. You say the children come out later. I did not have the timeline. That's also my understanding of the record. But apart from that, I have a question about whether that portion of the search, the protective sweep, is even being challenged on appeal. And that was going to be my next point, Your Honor, that I don't believe the appellants are challenging the protective sweep. It was pursuant to the emergency that was going on in the domestic violence situation. And appellant's main argument is that the warrantless search for the weapon was unreasonable and in violation of the Fourth Amendment. And there's two reasons that it was not. The first that you began discussing this morning is that Mrs. Lobdell impliedly consented to the search. And I'd like to correct the record here that appellants pointed out. They had said that Danielle Lobdell had not given any consent in response to a question about the search. But that is not true. The body cam video shows Officer Carbaugh asking Danielle Lobdell, can you show me where the box is referring to the gun case? And Danielle Lobdell gestures forward to have the officers follow her into the bedroom. And that is a direct question. Can you show me where that gun case is and where you last saw the gun? And it's not just that Mrs. Lobdell didn't see the gun. She had heard the gun being loaded. But the young son had seen his father walking around with the gun behind his back. And the young daughter had also heard the gun being loaded as well. So that's three reports of at least seeing or hearing the gun in the home. And Mrs. Lobdell does have the authority to consent to a search within her home. She lives in that home. She has the authority to agree to a search within that home. This is from Fernandez v. California. One occupant may consent even if the other objects. And your honors, I believe that you correctly pointed out that Mr. Lobdell never expressly um objected to the search that was going on. He was detained in the cop car and at no point does he say you shouldn't be searching my home or object to it. And in Georgia. And as you just pointed out, even if he had, she had an independent right to invite them in. It would be absurd if the of a crime, as she then was asserting she was, who had total residency in the area where the crime was being committed. When the police came and what she wants to show them where the crime was committed and how the gun was there and so forth and says, come with me and here you go. And the assaulter says, oh, no, I'm also resident. I assert you have no right to do that. That would be a very strange reading of the Fourth Amendment that she didn't have the right to override that. That's correct, your honor. That would go against her own agency to consent to something happening in her own home. And also the law says that if there is an objector to a search, that objector must be physically present within the home to state that objection. And here Mr. Lobdell was neither physically present. He was off off site from the home detained in a cop car, and he he did not expressly object or impliedly object. And here Mrs. Lobdell did have the authority to consent to the search within her home. She did. And and just on the quickly on the second point, your honor, that even if you find that Mrs. Lobdell did not consent to the search in the home, there are emergency circumstances here that do justify the warrantless search. And that is that there was a as we discussed just a moment ago, there was a loaded weapon in the home with two young children. And the basis for that search then is securing the weapon in order to protect the children from finding it later. Court has no further questions. I would then yield my remaining time to Ms. Yakely. Thank you. Thank you. And you might want to wait. Just give us a few seconds. I'll let you know when we're all set up. Okay, I think we're ready. Thank you, your honors. May it please the court. Ms. Adams made a very clear argument, which I appreciate because really the parties have the argument. So unless the court has any specific questions for me, what I would like to do is go back and add some additional information to questions that the judges, the panel has already asked. With respect to Judge Fletcher, he asked the plaintiff's attorney whether or not there was explicit permission to come in and search and what was his authority for saying that that was obviously that's a summary. I may have gotten it slightly incorrect. That is Fernandez. And that case specifically says that if a person is detained or under arrest, then it's the same as being absent. The other case that addresses the issue, well not the only, but another case that addresses the issue of implicit versus explicit is Escobar. And that's actually a Ninth Circuit case 309 Fed Sup 778, where it states that consent can be expressed or implied, but it must be unequivocal and specific. And as has already been described by Ms. Adams, the video is very clear that Mrs. Lobdell led them to the bedroom and said yes. They actually asked if they could look in the box. They dumped an entire storage box upside down on the bed and she continued to allow them to do so. So I agree with the argument that's been set forward by Ms. Adams that implicit consent was clearly given and I do believe that it meets the unequivocal and specific standard of the Supreme Court and of this court as well. The second question was by Judge Song and that is with respect to where in the record does it say there was no consent given. And I struggled to find that as well. My apologies to Plaintiffs Counsel in this particular case. I'm not exactly sure what ER 4-78 is, but I will submit to the record that nowhere in the complaint or the video camera is there any reference to Mr. Lobdell expressly saying you don't have authority to search. Again, parroting to some extent what Ms. Adams said, the only discussion was about whether or not there was a gun. Mr. Lobdell continually said there was not. Then we get back to even the implicit consent or I think the argument can be made that there is actually implicit consent given by Mr. Lobdell as well because the officer went so far as to say, look, could you just tell me where the gun is? I don't really want to have to tear your house apart. We just want to know where it is because we don't want to have guns in the house with the kids. So with respect to those two questions that were asked, I wanted to provide that supplemental information. Does the court have any specific questions for me? No. Okay. Thank you then, Your Honors. I appreciate your time. Thank you. When you're ready, counsel. I think you have three minutes and 56 seconds for your rebuttal. Yeah, well, I would like to point out that the officers repeatedly were discussing whether or not there were any exceptions to the warrant requirement. If they had consent from Mr. Lobdell or from anyone else, why were they having discussions about whether or not there was an exception to the warrant requirement that would allow them to go in and search the house? And that these discussions were 19 minutes into their time in the house. And the status of the case is that warrantless searches are presumed to be unreasonable. And the standard here is that the facts are to be assumed to be as stated by the plaintiff in the complaint. And the court's findings that Ms. Lobdell did not consent in the court below are something that should be considered. There was not any... Excuse me. Did you, in your briefing, state an objection to the protective sweep? I believe that we stated it in our argument and that we indicated that there was not any agreement to the search and that Ms. Lobdell never consented to the search. The protective sweep cannot be a protective sweep because they surrounded the house, they ordered Mr. Lobdell out, and he came out and surrendered and was handcuffed in the squad car at the time that the search was conducted. There was no one to be doing the protective sweep for. He's in custody. He's handcuffed. He's in the back of a squad car, mirandized, and not free to leave. So I'm not sure what they were doing a protective sweep for. I'm looking at your brief and I don't see anything about the protective sweep being a ground on appeal, but maybe if you want to point me to where in your brief you say that, I'll take a look. Well, I'll just point out that factually... No, I really would like an answer to my question. Where in your brief, if anywhere, do you state as a ground of appeal your objection to the protective sweep? Well, we argue that there was no community caretaking function and that this was actually a criminal investigation because they had placed Mr. Lobdell in handcuffs and advised him as Miranda Rice when they were interrogating him. That's at page 12 of our brief. And that the court would consider the totality of the circumstances and whether there was an immediate need to protect others or themselves from serious harm. And the search and the scope and the manner must be reasonable. And we cite U.S. v. Snipe. There wasn't a protective sweep here. He's in custody and in the back of the squad car when they're doing what they claim is a protective sweep. So, factually, the U.S. v. Snipe was saying that there has to be a reasonable basis to protect others or themselves from serious harm. And we argued that at page 12 of our brief. Okay, thank you, counsel. And forgive me, I had one other question. No problem. Give me the pages you say show that Mr. Lobdell objected? Uh, we cited ER 4 through 78 in our brief. I'm sorry. Oh, I'm sorry. We cited 4 through 78. What page of the record? Oh, we, uh, we cited to the record in 4 through 78 in our brief. 4 through 78? 4 through 78. So you're saying it's somewhere in that 74 pages? Yes. Where? And additionally, there is body cam of much of the... Now, I'm asking about what you just asserted in your argument. That you say the record shows that Mr. Lobdell objected to the search. And you're citing for that 74 pages. I have them now right in front of me. Show me where in those 74 pages that is stated. I don't have them in front of me right now. All right. Never mind. Never mind. All right. I apologize. Any further questions? Okay. Thank you, Council. This matter is submitted. Thank you.
judges: FLETCHER, SUNG, Rakoff